### Francis X. Caldwell v. William P. Gale.

The Court is not bound to follow as precedents adjudications outside the State—except the adjudications of the Federal Courts on questions arising under the Constitution and laws of the Federal Government—any further than they appear to the Court to be warranted by the fundamental principles of the common law.

The question discussed whether, where one erects a dam on his own land which causes the land of another to be flowed, and then conveys the land on which the dam is situated, a suit can be brought against his grantee for the nuisance before he has been served with notice of it and requested to remove it.

If such notice be necessary, and has once been given by the owner of the land flowed, it will enure for the benefit of his grantee, or of any one claiming title under or through the person giving the notice.

That which in a replication would not be a departure in pleading, may be given in evidence in reply to a defense under the general issue.

Where a notice from plaintiff's grantor was sufficient to entitle him to maintain the action, and such notice was proved, and the Court erroneously charged that the notice must be given by the plaintiff or by some one authorized by him: it was *held* that to entitle the plaintiff to take advantage of the erroneous ruling it was not necessary that the attention of the Court should be specially called to the evidence of notice at the time of the charge.

*Heard November 25th. Decided December 6th.*

Error to Monroe Circuit. The case is stated in the opinion.

*G. V. N. Lothrop*, for plaintiff in error:

Is notice necessary under any circumstances to sustain this action?

1. The earliest cases reported did not require notice See cases arranged per Lumpkin J. in *Bonner v. Welborn*, 7 *Geo.* 314.

But subsequently this distinction was taken. Where the action was brought against him who originally created the nuisance, no notice was necessary; otherwise when the action was *against a grantee* of the original wrong doer:— *Penruddock's case*, 5 *Coke*, 100.

This seems to have been followed in England; though the point does not appear to have been expressly adjudicated:—*Willes*, 583; 11 *M. & W.* 176; see 1 *Chit. Pl.* 83, 89, 389.

And so in many cases in this country:— 13 *Conn.* 303; 2 *Green, N. J.* 36; 44 *Me.* 156; 9 *N. H.* 91; 21 *N. H.* 309; 26 *N. H.* 275; 24 *Barb.* 404; 1 *Dutch.* 97.

2. But it seems doubtful, whether on principle these rulings can be applied to the action on the case.

Starkie thinks it not necessary:— 3 *Stark. Ev.* 992.

The Supreme Court of Georgia could see no principle on which it could be required:— 7 *Geo.* 314, 320.

And Judge Denio has strenuously assailed the doctrine. He points out that under Penruddock's case the ruling only applied to the real action *Quod permittat:*—2 *Kern.* 487.

Why in this case a party should not as in other cases be required to take notice of his own misfeasance or his own negligence, seems not easy to explain.

But even if notice is required, sufficient notice was shown in this case.

1. There is no case, it is believed, which requires notice to be given *by the plaintiff*, he being the grantee of the premises injured. The whole notion of notice proceeds, not on the relation of the plaintiff, *but on that of the defendant,*

to the premises. The object is to enable the defendant to act. The sole inquiry, therefore, is whether notice has been given *to the defendant* by one who had a right to give it.

2. Notice was never required to be given to the original wrong-doer. Even a grantee of the premises affected could sue him for a continuance without notice: — 7 *Geo.* 296.

And it was never questioned that every continuance of a nuisance is a fresh trespass: — 3 *Bl. Com.* 220; *Cro. Ja.* 231; 7 *M. & W.* 459; 1 *Denio*, 261; 10 *Mass.* 74.

It then seems necessarily to follow that, when the grantee of premises on which a nuisance has been erected, continues that nuisance with notice or knowledge that it is such, he thereby becomes himself a wrong doer: he stands to the person injured on the same footing as the original wrong doer, and his position in *relation to the wrong* being once fixed, it remains. He may be sued by the party injured, when this relation first becomes fixed. And he may also be sued by the alienee of such person as an original wrong doer could be, because by notice or knowledge he is placed on the footing of an original wrong doer: — 7 *M. & W.* 460.

All the authorities base the propriety of notice on the fact that the defendant, if a grantee, may in fact not know of the nuisance, may not have adopted it, and may be willing to remove it. Therefore he should have the opportunity before being immersed in an action : — 13 *Conn.* 307; *New Hampshire cases cited above.*

The notice is not merely to give the defendant knowledge, but to place him in a position in which he shall *voluntarily continue* and consequently adopt the nuisance: 3 *Dutch.* 474.

Hence when the thing erected was not essentially a nuisance, but only became so by the *use* of the *grantee*, notice was held to be unnecessary : — 1 *Dutch.* 72.

So when the defendant, a grantee, had by *affirmative* acts continued the nuisance : — 3 *Dutch.* 457.

So, knowledge of the fact of the nuisance by a grantee has been expressly held sufficient; and a notice by the authorities of the town has been held sufficient in an action by a private person:— 30 *Ala.* 318.

And in England it is held that a special notice left at the premises with one occupant, is sufficient to bind the subsequent occupant who takes the premises on which the nuisance exists and continues it: *Ry. & Moo.* 189.

The fair result is I think this. All that is necessary (even if so much is) to sustain this action against a grantee of premises which work a nuisance to another, is that the grantee should have knowledge of the fact of the nuisance, and permit or maintain its existence in defiance of the known claim of the plaintiff: — 24 *Barb.* 409.

*A. Felch,* for defendant in error:

In two classes of cases no suit can be maintained unless notice be given previous to its commencement that the dam is a nuisance, with a request to remove the same.

1. It must be given in all cases where the nuisance complained of was *erected by another and is merely continued in its original state* by a defendant holding under him:—*Ang. on Water.* § 403; 2 *Hill. on Torts,* 143; 2 *Fost.* 296; 9 *N. H.* 88; 2 *Green, N. J.* 36; 3 *N. H.* 88; 13 *Conn.* 303.

And said notice must be distinct and unequivocal in order to lay the foundation for an action:—*McDonough v. Gilman, in Am. Law Register, for June,* 1862, *p.* 507.

2. It must also be given where *the property affected by the nuisance has been conveyed to the plaintiff after the nuisance was erected.* The new purchaser willingly takes the property as he finds it, and it is considered as an assent on his part that it may remain in that condition until he requests that the obstruction be removed:—*Willes,* 583; 2 *Greenl. Ev.* § 472; 9 *N. H.* 88; *Penruddock's case,* 5 *Coke,* 100.

CALDWELL v. GALE.

*First.* The charge of the Court announced the law applicable to the case, if the jury found the facts bringing it within the first class of cases above mentioned. The instruction was predicated upon the assumption that the proof established to the satisfaction of the jury that the dam was erected by Tuthill, purchased by the defendant, and continued at its original height, &c. Nothing is stated or assumed in regard to the title of the plaintiff. The instruction was not based on the presumption that Caldwell was a recent purchaser, or that he had not been from the time the dam was erected the owner of the premises alleged to be injured. It does not assume that a notice had been given by a prior owner from whom Caldwell derived title, nor does it decide anything as to the effect of such a notice on the right of the plaintiff.

In fact, no charge could properly have been given to the jury on the hypothesis that the plaintiff had proved a notice by a prior owner through whom he claimed title. The bill of exceptions shows that the plaintiff below rested his case without proof of any notice, and that the testimony in regard to the title of the plaintiff, and the notice said to be given by Thomas Caldwell, was given and received as rebutting evidence, and solely to rebut the defendant's proof of prescriptive right, and not to enable him to make out his case. The plaintiff's case rested, then, on the original proof given by him, no notice being shown. There was no basis, therefore, laid by the proofs, for a charge upon the supposition that such notice had been shown by the plaintiff.

If the plaintiff had desired to have a charge from the Court, and the proofs would have rendered it proper, on the assumption that he was a recent purchaser of the premises injured, and that such notice was given by Thomas Caldwell, a previous owner, he should have asked the Court to instruct the jury that such notice by Thomas Caldwell was sufficient to give the present plaintiff a right to sue,

and should have excepted to the charge given if unsatisfactory, or to the ruling, if the Court refused to charge as desired.

On the hypothesis of facts stated in the charge, the law was correctly laid down. It was a charge merely that when the dam was erected by another and continued as before by a purchaser of the same, the plaintiff must give him notice before he can sue for an injury occasioned to his property by it.

*Second.* But if we look into the bill of exceptions and the assignment of errors instead of the hypothesis stated in the charge, the same conclusion follows. It is there stated that Thomas Caldwell was the owner of the premises alleged to be injured, from 1823 until January 15, 1856, when he conveyed the same to E. Adams — that Adams conveyed to Mary Ann Caldwell, January 21, 1856, who conveyed to the plaintiff, May 7, of the same year. The dam was erected in 1836, and had been continued ever since. The notice by Thomas Caldwell was claimed to be given in March, 1853.

Assuming this statement of facts, the case falls within the second class above mentioned, and the charge was correct. Notice given by Adams, while he was owner, was sufficient to enable him to maintain a suit to recover any damages suffered by him from the flowing caused by the dam. But the premises passed from Adams through two intermediate owners, and then became the property of the plaintiff. The dam having been continued after the notice by Thomas Caldwell, shows an acquiescence, notwithstanding, on his part, as long as he continued to be owner, and so by the two subsequent owners, and the premises were purchased by the plaintiff knowing their condition in reference to the effect of the dam. His acquiescence is also to be presumed until he notifies the owner of the dam to remove the obstruction.

CALDWELL v. GALE.

MANNING J.:

This is an action on the case for flowing the plaintiff's land by a mill dam.

The bill of exceptions shows that there was evidence before the jury proving, or tending to prove, that the dam was not. erected by defendant, but by a previous owner of the land on which it is situated; and that notice was given to defendant by Thomas Caldwell, when he owned the land now owned by plaintiff, of the overflowing of it by the dam, and of a request to defendant to remove it.

The Circuit Judge among other things charged the jury, in substance, that if the dam was not erected by defendant, and he did nothing more than continue it in the state it was in when he became the owner of the land, that to sustain the action it was necessary to show notice had been given to him of the nuisance, and that he had been requested to abate it, before commencement of suit; and that such notice had been given by the plaintiff, or by some one authorized by him.

The only error assigned is on this part of the charge of the Court.

To sustain the action, the charge assumes, if the jury should find the dam was not erected by defendant, 1st, That he had been served with notice of the nuisance, and had been requested to remove it, and, 2d, That such notice and request from a former owner of the land flowed, whose title plaintiff had acquired, was not sufficient.

If either of these propositions is incorrect, the charge is erroneous; otherwise not.

The first proposition is sustained by adjudged cases both in England and in this country. It appears to have had its origin as a rule of law in *Penruddock's Case*, 5 *Coke*, 100. It has antiquity on its side; and is therefore entitled to all the consideration and weight that time can

give to an adjudication, as precedent for other courts to follow. We are not, however, aware that the question has ever before arisen in our Courts, and we do not feel ourselves bound to follow, as precedents, adjudications outside of our own State—save adjudications in the Federal Courts on questions arising under the Constitution and laws of the Federal Government—any further than they appear to us to be warranted by the fundamental principles of the common law.

Any one who upholds and sustains a private nuisance, to the injury of another, is in law answerable for the injury done to such person. This is admitted to be law by all the cases, and is denied by none, with this qualification, viz : that the injured party give notice to the party sustaining the nuisance when he did not also create it, of the injury, and request its removal. We are not aware of any case holding it necessary to give such notice to the author of the nuisance, before bringing an action against him. He can not claim it. It is therefore a right, if it be a right at all, pertaining to his grantee. Now, why should there be this difference between one who erects a nuisance on his own land, and his grantee, who afterwards sustains and upholds it? It is said defendant may not have known that the dam was injurious to the plaintiff, or that his rights were impaired by it. The same may be said of the author of the nuisance; and if such a plea is not good in his mouth why should it be in that of his grantee? The wrong is none the less a wrong, so far as it regards the injured party, because the wrong doer intended no injury. Why is want of notice no excuse when coming from the author of the nuisance ? Because it is a fundamental principle of law that no man shall so use his own property as to injure another, by encroaching on his rights. We know of no exception to this rule, unless it be the one in question; and we see no reason why it should not and does not apply with all its force as strongly against the grantee as

CALDWELL v. GALE.

his grantor. But it is or may be further said, that the grantee may suppose his grantor has acquired the right to flow, from the owner of the land. He may suppose the same in regard to the title to the land purchased by him; but if his grantor had no title, he would have none, and no notice would be necessary to sustain an ejectment to oust him of his possession. And so it seems to us in regard to the right to use the land in a way to injure another. If his grantor had not acquired the right to flow, he could not have it. It is as clearly his duty to look into the right of his grantor before purchasing in the one case as in the other.

It is not our intention, however, to decide the question, but to leave it open for further consideration should it hereafter arise; as we are clearly of opinion, if notice in such case be necessary, that when it has once been given by a party authorized to give it, it will inure to the benefit of his grantee, or of any one claiming title under or through the person giving notice.

On the argument it was further objected, that the evidence of the notice given by Thomas Caldwell, when he owned the land, was offered by plaintiff and received by the Court as rebutting testimony to the defense interposed by defendant, and that it could not therefore be considered for any other purpose; and also, that if plaintiff was dissatisfied with the charge, he should have called the attention of the Court particularly to this evidence, and requested the Judge to charge upon it; and that in consequence of his not having done so, he can not now refer to it for the purpose of showing the charge incorrect. We do not think either of these objections tenable.

To determine what is strictly rebutting evidence, and that which, at the same time that it overthrows the defense goes to establish the plaintiff's cause of action, reference must be had to the pleadings and the order of trial under them.

CALDWELL v. GALE.

The declaration is in case for flowing plaintiff's land, to which the general issue is pleaded. On the trial, plaintiff, to make out his case, proved the existence of the mill-dam, and defendant's possession of the land on which it is situated, and that the dam was kept up by defendant. He then showed himself in possession of the land flowed, during the time stated in the declaration, and his damages. Here he rested, having proved all that was necessary to sustain his action. Defendant to show a right in himself to keep up the dam and flow the land, introduced evidence of the erection of the dam in 1836, by Lawrence and Tuttle, and Lawrence's title to the land on which the dam stands, at that time, and defendant's subsequent acquisition of his title by a chain of conveyances from Lawrence to himself; and that he and those under whom he claimed had, for more than twenty years, kept up the dam and flowed the plaintiff's land, without any claim having been made that he and the persons under whom he claimed had not a right to do so. To break this defense or right by prescription set up by defendant, plaintiff proved that Thomas Caldwell was the owner of the land mentioned in the declaration, and was in possession thereof from 1823 to 1856 ; the acquisition of Caldwell's title by himself, through sundry mesne conveyances; an agreement between Caldwell when he owned the land and Tuttle to flow the same, previous to Tuttle's conveyance of the land on which the dam is situate—he being one of the persons through whom the title passed in going from Lawrence to defendant; defendant's knowledge of the agreement, his repudiation of it, and a notice from Caldwell to him to remove the same. Had defendant set up his defense by a special plea, plaintiff would have been required to state in his replication, in substance, the very facts he proved on the trial in reply to defendant's evidence. And it will not be contended that plaintiff has any less rights under the general issue than he would have had under special pleading.

CALDWELL *v.* GALE.

Plaintiff could not know what defense would be made, and if he had known, it was not his duty to anticipate it by countervailing testimony. Until the defense was entered upon it did not appear that defendant had not himself erected the dam. The presumption, if there was any, was against him, as he was in possession of it, and there was no evidence any one else ever had been. The same presumption, if any, would have been made from plaintiff's possession, viz: that he was in possession of the land flowed when the dam was erected, and had continued in possession to the bringing of the action. It was therefore necessary for him, to break the defense, to show Thomas Caldwell's title, and that he did not admit the right of Lawrence and his grantees to flow the land, except under the agreement between him and Tuttle, and defendant's knowledge and repudiation of that agreement. What would not in a replication be a departure in pleading may be given in evidence in reply to a defense under the general issue.

As the bill of exceptions shows no evidence of notice, save that given by Thomas Caldwell, we must suppose the Judge had that in his eye when he charged as he did, that the notice must be given by plaintiff or by some one authorized by him.

These words clearly negative the legal effect of the notice given by Thomas Caldwell, and under the circumstances we must suppose were so intended. by the Circuit Judge and understood by the jury.

The judgment must be reversed and a new trial had, with costs to the plaintiff in error.

MARTIN CH. J. and CAMPBELL J. concurred.

CHRISTIANCY J. did not hear this case.