THE INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY
v. LOUIS BENDER.

No. 162.

**Unfenced Track Evidence of Want of Care.**

A receiver having exclusive control and management of an unfenced railway is liable for the value of cattle killed on it by cars, as would be the railway company, without further proof of negligence ........... 100

QUESTION CERTIFIED from Court of Civil Appeals for First District, in an appeal from the County Court of Harris County.

*Tackaberry & Tackaberry*, for plaintiff in error.

*H. B. Cline* and *W. S. Oldham*, for defendant in error.

STAYTON, CHIEF JUSTICE. — The question certified is: Whether a receiver having exclusive control and management of an unfenced railway is liable for the value of cattle killed on it by cars, as would be the railway company, without proof of negligence?

The statute provides, that "each and every railway company shall be liable to the owner of stock killed or injured by the locomotives and cars of such railway company in running over their respective railways, which may be recovered by suit before any court having competent jurisdiction of the amount. If the railway company fence in their road, they shall

only then be liable in case of injuries resulting from the want of ordinary care." Sayles' Civ. Stats., art. 4245.

The sixth section of the Act of March 19, 1889, recognizes the liability of a receiver for stock killed while a railway is managed by him.

The cause of action for killing stock by the locomotives or cars of a railway company does not rest on statute.

The statute, however, in effect, makes the failure to fence, when this may be done, conclusive evidence of such negligence as fixes liability; and when such injuries might be avoided by such care as fencing would evidence, courts must give effect to such statutes, even if their sole purpose was the protection of stock.

Such statutes, however, are in the nature of police regulations, designed to secure the safety of persons and of property passing over such roads, by thus inducing railway companies to exclude cattle from their roads by fences.

The method for securing this end is an indirect one, but nevertheless such is the purpose of such legislation, under which it has been constantly held, that railway companies are liable for injuries to stock, although the railway may have been in the exclusive management and control of a receiver at the time the injury occurred. Railway v. Wood, 24 Kans., 619; Railway v. Fitch, 20 Ind., 498; Railway v. Cauble, 46 Ind., 277; High on Rec., 397; Railway v. Russell, 23 Am. and Eng. Ry. Cases, 149.

Looking to the leading purpose of such legislation, it is apparent that the same reasons exist for enforcing the rule when a railway is operated by a receiver as exist when a railway company has full control of its own property.

The liability of a receiver, unless based on some personal wrong, is solely official, and compensation for injury inflicted while a railway company is controlled by a receiver must be made, if at all, from funds belonging to the corporation; and no reason is perceived why the rule of evidence applicable in terms to a railway company should not apply to a receiver when engaged in operating a railway.

The reasons for enforcing such a rule are as forcible when a railway is under the exclusive control of a court and its receiver as when it is operated by the company to which it belongs; and we see no reason to doubt the propriety of applying the same rules of evidence and the same general rules of law in determining the liability of a receiver which would be applied in determining the liability of a railway company in all cases in which the action is not based on a statute which by its terms excludes such application.

Neglect to fence a railway is chargeable to the company owning it; and if it can have no ground for complaint because funds belonging to it, even while in the hands of a receiver, may be appropriated in satisfaction of

claims for stock killed, no reason is seen why a receiver, who has no personal interest in such funds, should be heard to complain on account of their appropriation to satisfy a claim arising while the road is in his hands.

Delivered May 31, 1894.